IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| BRYAN T. QUIBELL, | * CHAPTER 7 |
|     Debtor | * |
| | * CASE NO. 1:10-bk-05863MDF |
| ALLEN NACE, | * |
|     Plaintiff | * |
| | * |
| v. | * ADV. NO. 1:10-ap-00337MDF |
| | * |
| BRYAN T. QUIBELL, | * |
|     Defendant | * |

## OPINION

Before me are cross motions for summary judgment in the above-captioned case in which Allen Nace ("Nace") requests a declaration that his claim against Bryan Quibell ("Debtor") for investment losses is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2), (6), and (19). For the reasons set forth below, Nace's motion is denied and Debtor's motion is granted in part.[1]

### I. Procedural History

Debtor filed his Chapter 7 bankruptcy petition on July 20, 2010. He listed Nace as a creditor holding a disputed unsecured claim for "recovery of investment" in the amount of $308,014. On September 7, 2010, Nace filed an Adversary Complaint objecting to the discharge of his claim. Debtor moved to dismiss the Complaint for failure to state a claim on which relief could be granted. Debtor's motion was granted in part and denied in part and leave was granted to file an amended complaint.

On February 2, 2011, Nace filed an Amended Complaint. Debtor filed an answer and the parties conducted discovery. On June 2, 2011, Nace moved for summary judgment. In support of

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O).

the motion he filed a statement of material facts, a brief, and deposition transcripts for Nace and Debtor. Debtor answered Nace's motion and filed a cross motion seeking summary judgment and a statement of material facts. Both parties filed responses admitting or denying the opposing parties' statements of material facts.

**II. Background**

Nace is a self-employed residential builder. In 2007, Nace purchased homeowner and motor vehicle insurance through Debtor, an insurance agent, who also was licensed to sell securities. At the time Debtor became his insurance agent, Nace was actively investing in the stock market, but generally through mutual funds. By the end of 2007, Nace had liquidated all of his portfolio, worth approximately $500,000, and had deposited the funds in a money market account. Nace retained Debtor to assist him in the liquidation process.

In the summer or fall of 2008, Debtor was introduced to Steve Tavenner ("Tavenner") and Matthew Sindlinger ("Sindlinger"), the general partners of Pillar Equity Partnership, L.P. ("Pillar Equity"). According to documents provided to Debtor, Pillar Equity was a Pennsylvania limited partnership "formed for the purpose of financing and owning high growth private equity assets." Debtor attended two meetings with Tavenner and Sindlinger to become familiar with the Pillar Equity program. Following these meetings, debtor invested $5000 of his own funds in the partnership. Debtor also began to market Pillar Equity to Nace and other potential investors.

Debtor provided Nace with a promotional document entitled "Portfolio of Corporate Holdings" ("Portfolio"), which stated that Pillar Equity or its affiliates owned various parcels of land in Pennsylvania and other states, the value of which had increased significantly in the short term. These promotional materials specifically stated that two properties in Dover, Pennsylvania

2

were included in Pillar Equity's portfolio.[2]

On February 2, 2009, Nace executed an Application for Certificate of Partnership (the "Application") through which he was to receive 300 "Limited Partnership Units" ("Units") in Pillar Equity for the sum of $300,000. Debtor signed the Application as a representative of Pillar Equity. In exchange for the investment, Nace received a promissory note for his investment with interest at 7% payable in one year. On February 6, 2009, 300 units in Pillar Equity were issued to Nace, which are evidenced by a Certificate of Interest ("Certificate"). In the ensuing months, Nace received monthly statements on his Pillar Equity account, which contain the following notation: "Certificate of Equity, Fixed Interest Rate: 7%." The statement listed Debtor as the "investment representative" for Pillar Equity and provided his address and phone number. Debtor admits that he represented to Nace that the certificate for 300 Units was similar to a bank certificate of deposit.

In the summer of 2009, Debtor informed Nace that Debtor's mother, who had also invested in Pillar Equity, had requested an early withdrawal of her principal but had been informed that there were insufficient funds available to liquidate her investment. Debtor and Nace arranged to meet with Sindlinger and Tavenner to discuss the situation. At the meeting, Nace was reassured that his investment was safe, that Pillar Equity's liquidity problem was only a short term one, and that he would receive full payment on the Note when it became due.

---

[2]According to an affidavit executed by a title searcher/abstractor for the Abstracting Company of York County, "Pillar Property Group, LLC" has never owned real estate in Dover, Pennsylvania, and no other "Pillar" entity has ever owned real estate in York County. (Plaintiff's Statement of Material Facts, Affidavit of Patricia L. Shell.)

During part of 2009, Pillar Equity paid monthly commissions to Debtor of $2,000 to $2,500 per month. The amount was not fixed, but varied from month to month. Commissions paid to Pillar Equity representatives were not disclosed on the monthly statements received by Pillar Equity investors. In total, Debtor sold Pillar Equity Units to approximately fifteen investors.

The Note matured in February 2010. When he contacted Pillar Equity to liquidate his investment, Nace was advised that there were insufficient funds to pay him in full. After Nace made a formal demand for payment, he received approximately $75,000, but he received no further payments thereafter.

On April 20, 2010, at Nace's request, Pillar Properties Group, LLC, Pillar Equity, Pillar Capital Advantage, LLC, Pillar Corporation, Pillar Capital Growth, LLP, Sindlinger, Tavenner, and Debtor executed a judgment note in favor of Nace in the amount of $276,753.13 for the unpaid balance due under the Note. Nace confessed judgment on the judgment note on May 4, 2010.

On April 23, 2010, the Pennsylvania Securities Commission issued a press release announcing that it had issued a "Summary Order to Cease and Desist" against Pillar Capital Advantage, Sindlinger, and Tavenner to halt the sale of notes in connection with the Pillar Equity program. Debtor was not named in the press release.[3]

## II. Discussion

A motion for summary judgment seeks resolution of a controversy based on the pleadings alone. A court is required to grant summary judgment "if the pleadings, depositions, answers to

---

[3]The Order to Cease and Desist is not contained in the summary judgment record.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056 incorporating Fed. R. Civ. P. 56(c). Courts allocate the burden of proving these two element in the following manner. The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present legal argument or evidence to show that there is a genuine issue for trial. *Id.* at 324. All justifiable inferences from the evidence are to be drawn in favor of the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The burdens of proof do not change when parties file cross motions for summary judgment. *Peters Twp. Sch. Dist. v. Hartford Accident & Indem. Co.* 833 F.2d 32, 34 (3d Cir. 1987). A court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovant. *Pichler v. Unite,* 542 F.3d 380, 386 (3d Cir. 2008).

At the summary judgment stage a court may not weigh the evidence or make credibility determinations. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir. 1993). Therefore, to raise a genuine issue of material fact, "the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant, but simply must exceed the 'mere scintilla' standard." *Id.; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

Nace has made the task of ruling on these motions more difficult by failing to separate claims under 11 U.S.C. § 523(a)(2), § 523(a)(6) and § 523(a)(19) into separate counts in his

5

Amended Complaint. Based upon Nace's request for relief, however, the Court will discuss these intermingled claims as separate counts.

   A.   *Nondischargeability under § 523(a)(2)(A)*

Section 523(a)(2)(A) provides that a debtor will not receive a discharge of a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to succeed in a § 523(a)(2)(A) claim, a creditor must prove the following five common law elements of fraud: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009); *In re Negley,* 2008 WL 5158573 (Bankr. M.D. Pa).

The making of a false representation, either through active communication or through an omission, is the first element of a § 523(a)(2)(A) cause of action.[4] Nace alleges a false statement

---

[4] "A debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A). A material fact is one touching upon the essence of the transaction." *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression." *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992).

or omission by Debtor in six paragraphs of the Amended Complaint. Specifically, the Complaint states that Debtor:

(1) "represented that [Nace] would get a fixed rate of return and that the note was asset backed by real estate;"
(2) "provided certain literature concerning the investment which created the illusion that the investment was sound;"
(3) "represented to [Nace] that he was familiar with this investment;"
(4) represented "that it was a sound and appropriate investment for the [Nace];"
(5) failed to disclose that the securities purchased by Nace were not registered; and
(6) failed to disclose that he was an investment representative for Pillar until after Nace had invested $300,000 with Pillar.

Debtor admits that he gave Pillar Equity's pre-printed Application and promotional materials to Nace. However, Debtor argues that he was not responsible for the content of these documents; he neither had a hand in drafting them, nor possessed knowledge that the content was false. Debtor does admit that he represented to Nace that the investment in Pillar Equity was similar to a certificate of deposit. Debtor's testimony at his deposition suggests that he, like the investors he advised, was unaware that the Pillar Equity investment was not as safe as it was purported to be.

In Nace's statement of material facts, he stated that he "took into account" the representations made in the Pillar literature provided by Debtor that Pillar owned "real estate which would have positive equity of $11,604,000." As discussed above, two of the properties allegedly owned by Pillar Equity were located in Dover, Pennsylvania. However, the York County Recorder of Deeds' records show that neither Pillar Equity nor any other "Pillar" entity ever owned real property in Dover. Nace also testified that Debtor told him that he "had looked at most of the properties to verify that they were properties they owned." (Nace Deposition, p. 97.) Disputing Nace's claim, Debtor testified in his deposition that he did not perform any

7

independent inquiry to determine Pillar Equity's ownership interest in any of the real estate listed in the promotional materials. (Quibell Deposition, pp. 39, 73.) These are classic credibility determinations that must be made at trial and bar entry of summary judgment.

The parties also dispute the nature of their relationship. Nace emphasizes that Debtor was licensed to sell securities, yet he apparently did not understand that Debtor would receive a commission when he sold Pillar products. It is unclear how Nace expected that Debtor would be compensated. Nace asserts that he believed that Debtor would direct him to investments that were "appropriate" for him based upon his low tolerance for risk. Nace argues that because Debtor knew his investment goals, steering him toward a high risk investment in Pillar Equity was fraudulent. Although Nace mixes the concepts of fiduciary duty with issues of reliance, whether it was appropriate for Nace to rely on Debtor's suggestion that he consider investing in Pillar must be resolved at trial. There is insufficient evidence to determine whether Nace's reliance on Debtor's representations or his expertise was justified.

As to two of the allegations in his Amended Complaint, Nace's cause of action must fail. Nace asserts that Debtor failed to inform him that the Pillar Units were unregistered securities and that he was unaware that Debtor had a relationship with Pillar. The Application Nace executed stated that: "THE OFFER AND SALE OF THE LIMITED PARTNERSHIP ("UNITS") DESCRIBED HEREIN IS NOT BEING REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY STATE'S SECURITIES ACTS REGISTRATION REQUIREMENTS." (Nace Deposition Ex. 7) (Capitalization in the original.) Nace also alleges that Debtor failed to disclose that he was an investment representative for Pillar. Debtor's denial of this allegation is supported by the Application itself, which Debtor signed as a "Pillar Equity

8

Case 1:10-ap-00337-MDF    Doc 41    Filed 08/29/11    Entered 08/29/11 12:50:37    Desc
Main Document    Page 8 of 14

Partnership Representative." Therefore, neither of these allegations support a cause of action for false representation. But more generally, I conclude that the evidence at this juncture is insufficient to award summary judgment in favor of Nace under § 523(a)(2)(A) or in favor of Debtor.

  B. *Nondischargeability under § 523(a)(2)(B)*

Section 523(a)(2)(B) provides that a debtor will not receive a discharge of a debt:

(2) for money, property, services, or an extension, renewal, or refinancing of
credit, to the extent obtained by –
  (B) use of a statement in writing –
    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor . . . reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

To prove his cause of action under § 523(a)(2)(B), Nace relies on statements contained in the "Confidential Private Placement Memorandum/Disclosure Statement" ("Disclosure Statement") attached to the Application that he executed on February 2, 2009. Nace asserts that these statements are attributable to Debtor because he gave Nace the Disclosure Statement and signed the Application. Nace is correct that information was provided by Debtor, but the information did not concern Debtor's financial condition. It purported to describe Pillar Equity's assets. Therefore, § 523(a)(2)(B) would only apply if Pillar Equity is an "insider" in relation to Debtor. In regard to an individual, the term "insider" includes a debtor's relative, a partnership in which the debtor is a general partner, a general partner of the debtor, a relative of a general partner of the debtor or a corporation in which the debtor is a director, officer, or person in control. 11 U.S.C. § 101(31). Pillar Equity is a limited partnership. Debtor asserts that he has no

9

interest in Pillar Equity, other than his $5000 investment, and that he neither is or was an officer, director, or shareholder of Pillar Equity. In response, Nace asserts that Debtor was Pillar Equity's "investment representative." Debtor's relationship to Pillar Equity as an "investment representative" is insufficient to establish an insider relationship. Neither party addresses whether Debtor was a general partner of Pillar Equity. Although the statements in writing received by Nace made representations about Pillar Equity's assets, these statements were not "respecting the debtor's or an insider's financial condition." Therefore, Debtor's motion for summary judgment will be granted as to Nace's cause of action under § 523(a)(2)(B).

    C.    *Nondischargeability under § 523(a)(6)*

Section 523(a)(6) provides that "[a] discharge . . . does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity . . . ." 11 U.S.C. § 523(a)(6).

To make out a case for nondischargeability based on a willful injury under § 523(a)(6), a plaintiff must plead and prove that the defendant actually intended to inflict harm. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Id.* at 64. However, an "actor's deliberate act with knowledge that the act is substantially certain to cause injury is sufficient to establish willful intent" for purposes of § 523(a)(6). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207-08 (9th Cir. 2001). *See also Conte v. Gautam (In re Conte)*, 33 F.3d 303, 305 (3d Cir. 1994) ("An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result.")

10

In the Amended Complaint, Nace alleges that Debtor provided him with false and misleading information that induced him to invest in a highly speculative real estate investment scheme that ultimately failed. He further alleges that Debtor should have known that the investment was "unsuitable" and that he was selling unregistered securities in violation of state and federal law. Debtor denies any intent to harm Nace in the course of brokering his purchase of the Units. Thus, a genuine issue of material fact exists as to Debtor's intent to injure Nace or, alternatively, his knowledge that his actions were substantially certain to cause injury to Nace. Accordingly, summary judgment may be granted neither in favor of Nace nor in favor of Debtor on the cause of action under § 523(a)(6).

    D.    *Nondischargeability under § 523(a)(19)*

Section 523(a)(19) provides that a discharge does not discharge an individual from any debt that:

(A) is for –

    (i) the violation of any of the Federal securities laws . . ., any of the State securities laws, or any regulation or order issued under such Federal or State securities laws: or
    (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from –

    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
    (ii) any settlement agreement entered into by the debtor; or
    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

In the matter before me, Nace asserts that the Cease and Desist Order issued by the Pennsylvania Securities Commission establishes that there was a violation of state securities law. Debtor acknowledges in his statement of material facts that a Cease and Desist Order was entered against Pillar Capital Advantage, Sindlinger, and Tavenner. But even if the issuance of a Cease and Desist Order establishes that a violation of Pennsylvania securities law occurred, the Order was not entered against Debtor. Nace argues that Debtor's act of signing the judgment note was an admission of culpability that places Debtor in the same position as the parties to the Cease and Desist Order, but he has offered no legal support for this theory.

Separated into its component parts, § 523(a)(19) bars discharge of a debt if two conditions are met. First, the Court must determine whether a debt was incurred for violation of securities laws or for fraud in connection with the purchase or sale of a security. Second, the Court must find that the debt arises from a judicial or administrative order or a settlement agreement. Both conditions must be met. *Nusse v. Jafari (In re Jafari)*, 401 B.R. 494, 496 (Bankr. D. Colo. 2009).[5] In this case, the debt in question arose as a result of a judgment note signed by Debtor and other parties prior to the filing of Debtor's bankruptcy petition. (Quibell Deposition p. 80, Ex. C-1.) Although Debtor admits that a Cease and Desist Order was issued against Pillar Capital Advantage, Sindlinger, and Tavenner, there is no evidence on the record

---

[5]Section 523(a)(19) was added to the Bankruptcy Code by § 803 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-24, §803(3), 116 Stat. 745 and amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Senate committee report for the 2002 Act states that this exception to discharge will "make judgments and settlements arising from state and federal securities law violations brought by state and federal regulators and private individuals non-dischargeable." S. Rep. 107-146 (2002) *quoted in Mollasgo v. Tills (In re Tills)*, 419 B.R. 444, 452 (Bankr. S.D. Cal. 2009).

that the debt was incurred for a violation of state securities laws or was related to the sale of securities to Nace.

Under the terms of the Note, Nace was to receive payment in full with interest twelve months from the date of the Note. Pillar Equity failed to meet this obligation. Pillar Equity, its related entities, the principals of Pillar Equity, and Debtor gave Nace a judgment note for reasons that are unclear on the record. Nace has failed to present evidence establishing a nexus between the Cease and Desist Order and the judgment note. Therefore, based upon the documents and undisputed facts submitted in support of the motions for summary judgment, I am unable to find, as a matter of law, that the judgment note is in settlement of state securities law violations. Therefore, summary judgment against Nace and in favor of Debtor would be appropriate if this exception to discharge applied only to state and federal securities laws violations. However, § 523(a)(19) also makes nondischargeable debts arising from a settlement of a claim for common law fraud, deceit, or manipulation in connection with the purchase or sale of a security. Section 523(a)(19) overlaps section 523(a)(2) to the extent that the (a)(19) exception arises from fraud. *Collier on Bankruptcy*, Sixteenth Edition, ¶ 523.27, p. 523-131. Having determined that summary judgment in favor of either party under § 523(a)(2)(A) is not appropriate, the Court, likewise, finds summary judgment under § 523(a)(19) not to be appropriate.

## Conclusion

The pleadings and depositions with attached documents show that there are genuine issues of material fact and, therefore, neither Nace nor Debtor is entitled to judgment as a matter of law on Nace's claims under § 523(a)(2)(A), § 523(a)(6) and § 523(a)(19). These same pleadings and supporting documents, however, support summary judgment in favor of Debtor on

Nace's claims under § 523(a)(2)(B). Trial on the Amended Complaint shall be held on October 20, 2011.

An appropriate order will be entered.

**By the Court,**

_Mary D France_
Chief Bankruptcy Judge

Date: August 29, 2011