IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| **BRYAN T. QUIBELL,** | * | **CHAPTER 7** |
| Debtor | * | |
| | * | **CASE NO. 1:10-bk-05863MDF** |
| **ALLEN NACE,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **ADV. NO. 1:10-ap-00337MDF** |
| | * | |
| **BRYAN T. QUIBELL,** | * | |
| Defendant | * | |

**OPINION**

Before me is the Amended Complaint filed by Allen Nace ("Nace") requesting that the Court find that his claim against Bryan Quibell ("Debtor") is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2), (a)(6), and/or (a)(19). For the reasons set forth below, judgment will be granted in favor of Debtor, and the Amended Complaint will be dismissed.

**I. Procedural History**

Debtor filed his Chapter 7 bankruptcy petition on July 20, 2010. He listed Nace as a creditor holding a disputed unsecured claim for "recovery of investment" in the amount of $308,014. On October 21, 2010, Nace filed a proof of an unsecured claim in the amount of $314,174.85. On September 7, 2010, Nace filed a complaint requesting that his claim be excepted from Debtor's discharge. Debtor's subsequent motion to dismiss the complaint for failure to state a claim on which relief could be granted was sustained in part with leave granted to file an amended complaint.

On February 2, 2011, Nace filed his Amended Complaint. Debtor filed an Answer and the parties conducted discovery. After discovery was concluded, the parties filed cross motions for

summary judgment. Nace's motion for summary judgment was denied. Debtor's motion for summary judgment was granted as to Nace's claims under 11 U.S.C. § 523(a)(2)(B), but denied as to his claims under § 523(a)(2)(A), (a)(6) and (a)(19). Trial of the matter was held on October 20, 2011, and post-trial briefs were filed. The matter is ready for decision.[1]

## II. Factual Findings

Although he has since retired, at the time of the events in this case Nace was self-employed as a home builder. In 2007 he purchased homeowner and motor vehicle insurance through Debtor, an insurance agent, who also was licensed to sell securities. Before 2007 Nace had been actively investing in the stock market, primarily through mutual funds. When he became concerned about the direction of the market he began liquidating his portfolio. In March 2008 he hired an investment manager, Horan Capital Management ("Horan"), to develop a portfolio of investments suitable for his investment goals. He soon became dissatisfied with Horan's services and retained Debtor to liquidate his investments. The value of Nace's portfolio when it was liquidated by Debtor was between $600,000 and $700,000.

In the summer or fall of 2008, Debtor was introduced to Steve Tavenner ("Tavenner") and Matthew Sindlinger ("Sindlinger"), the principals of various partnerships and other entities comprising the Pillar Property Group ("Pillar").[2] According to literature prepared by Tavenner

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] The Pillar Property Group consisted of at least five separately named entities, including Pillar Equity Partnership, Pillar Capital Advantage, Pillar Capital Growth, and Pillar Corporation. None of these entities are defendants in this action. It is not necessary to distinguish one entity from another in this case, because their identities have no bearing on the ultimate issue of whether Nace holds a claim against Debtor that is nondischargeable. Therefore,

2

and Sindlinger, Pillar was "formed for the purpose of financing and owning high growth private equity assets." (Nace Ex. 3.) Debtor was interested in working with Tavenner and Sindlinger and attended two meetings with them to become familiar with Pillar and the investments it was marketing. Debtor became an "investment representative" for Pillar in September 2008. Thereafter, Debtor invested $5000 of his own funds in Pillar and began to market its security offerings to Nace and other potential investors. Between September 2008 and May 2009, approximately eighteen individuals, including Nace, invested $660,220 in Pillar as a result of Debtor's efforts.

To promote its investments, Pillar published a number of documents touting the historical success of its investment strategies and describing its business model and assets. These documents were authored by Sindlinger and Tavenner. Before their publication, Debtor proofread and reviewed the documents for style, formatting, and presentation. After they were finalized, Debtor provided Nace with several of these documents, including a "Portfolio of Corporate Holdings" (the "Portfolio"). The Portfolio represented that Pillar owned twelve properties – eight in Maryland, three in Pennsylvania, and one in Washington, DC – the value of which had increased significantly in the short term. Debtor also provided Nace with a document entitled "Pillar Property Group, LLC, Corporate Properties as of December, 2008" (the "Corporate Properties List" or "the List"), which identified twelve specific properties by their street and municipality and gave what was described as the "purchase price," "current market value," and "monthly income" for each property.

---

for purposes of this Opinion, all Pillar Property Group entities will be referenced simply as "Pillar."

3

As demonstrated by the evidence presented at trial, Pillar did not own any of these properties and at most held a lease with an option to purchase.[3] Further, Pillar received no income from the properties. One property on the Corporate Properties List, located at 3313 Nicole Court, Dover, Pennsylvania, was Sindlinger's residence, and not an investment property. At trial, Debtor admitted that he knew that the Dover property was Sindlinger's home, but whether he learned this information before or after he marketed the Pillar investment to Nace is unclear from the record.

During the period he was representing Pillar, Debtor visited three properties on the Corporate Properties List (in addition to Sindlinger's residence) to evaluate them for insurance purposes. However, in the course of his evaluation Debtor did not attempt to determine who held title to the four properties he insured. On each policy the named insured was Sindlinger.[4]

On February 2, 2009, Nace executed an Application for Certificate of Partnership (the "Application") through which he was to receive 300 "Limited Partnership Units" in Pillar for the sum of $300,000. Debtor signed the Application in the capacity of Pillar's representative. In exchange for the $300,000, Nace received a promissory note (the "Note") purporting to warrant the return of principal in twelve months along with interest at 7%. Debtor also signed the Note

---

[3]At trial, Sindlinger testified that Pillar held leases with options to purchase some of the properties, but that it never actually owned them. He conceded that the language of the List indicating that Pillar actually owned the properties "could have been chosen better." (N.T. 46.)

[4]Debtor admitted that he did not know who owned the properties, but apparently believed that it was proper to list Sindlinger as the insured even if a property were owned by Pillar. (N.T. 155-56). No evidence was elicited as to who was named as the loss payee on any of the policies.

4

as Pillar's representative.[5] On February 6, 2009, 300 Limited Partnership Units were issued to Nace, evidenced by a Certificate of Interest ("Certificate") executed by Sindlinger. Debtor represented to Nace that the Certificate was similar to a bank certificate of deposit.

In 2009, Pillar paid $2000 to $2500 in monthly commissions to Debtor. Commissions paid to Pillar representatives were not disclosed on the monthly statements received by Pillar investors.

In the summer of 2009, Debtor informed Nace that his mother, who had also invested in Pillar, had requested an early withdrawal of her principal, but had been informed that the funds on hand were insufficient to liquidate her investment. Debtor suggested to Nace that he might want to consider withdrawing his investment in Pillar. Nace responded that withdrawal would be "stupid" if Pillar was experiencing a temporary cash flow problem that would correct itself in the near term. (N.T. 73). Nonetheless, Nace asked Debtor to arrange a meeting with Sindlinger and Tavenner to discuss the situation. At the meeting, which Debtor attended, Nace was reassured that his investment was safe, that Pillar's liquidity problem was only temporary, and that he would receive full payment on the Note when due.

The Note matured in February 2010. When Nace contacted Pillar to obtain payment of the principal and interest, Nace was advised that there were insufficient funds to pay him in full. After he made a formal demand for payment, he received a total of $86,000 in three installments, but no additional payments were made.

---

[5]The promissory note contains a line for the signature of a "General Partner" of Pillar, but no signature exists on the copy of the note that was introduced into the record.

In response to Nace's demand for payment, on April 20, 2010, Debtor, Sindlinger, Tavenner, and each of the Pillar entities executed a judgment note with a confession of judgment clause ("Judgment Note") in favor of Nace for the unpaid balance on the Note of $276,753.13. Nace confessed judgment against Debtor on May 4, 2010. The Judgment Note made no reference to the basis for the debt other than the amount of the underlying obligation. It did not refer to the issuance of securities or describe a violation of state or federal securities laws.

On April 20, 2010, the Pennsylvania Securities Commission ( the "Commission") issued a "Summary Order to Cease and Desist" against Pillar, Sindlinger, and Tavenner to halt the sale of Pillar investments. In the Order, the Commission made certain factual finding, including the following: (1) that Pillar had advertised and offered to sell securities to at least one Pennsylvania resident (not named in the Order) through notes that Pillar described as "enhanced CD products"; (2) that Pillar promised higher fixed rates of return on these notes than ordinary certificates of deposit marketed by banking institutions; and (3) that Pillar represented that it could offer better rates because it monitored the bank CD market to obtain the highest rates and augmented these returns with interest from its lending operations. (Nace Ex. 1.) Based on these findings, the Commission concluded that Pillar, Sindlinger, and Tavenner had "engaged in and are about to engage in acts and practices which violate" the Pennsylvania Securities Act. (Nace Ex. 1.) Therefore, the Commission ordered these parties to cease and desist from "offering and selling" these investments in Pennsylvania.

Although the Cease and Desist Order indicates that the Commission's findings were based on Pillar's interaction with "a Pennsylvania Resident," no evidence was presented that Nace was the resident to whom it was referring. Sindlinger testified that Pillar used the same

6

form of Certificate for each of its investors and that the Cease and Desist Order pertained to all of its Certificates. Thus, the record indicates that the Certificate Nace received was issued in violation of Pennsylvania Securities Law. Debtor was not named in the Cease and Desist Order, and he testified that he has never been the subject of an enforcement action by the Securities Commission.

### III. Discussion

Nace's Amended Complaint cites paragraphs (a)(2)(A), (a)(6), and (a)(19) of § 523 as providing grounds for relief. In his brief, Nace makes no argument regarding a cause of action under § 523(a)(6), therefore, this claim will be regarded as having been abandoned. I will address separately Nace's claim that his debt should be excepted from discharge under paragraphs (a)(2)(A) and (a)(19).

    A.    *Exception from discharge under § 523(a)(2)(A)*

Section 523(a)(2)(A) provides that a debtor will not receive a discharge of a debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to succeed in a § 523(a)(2)(A) action, a creditor must prove each of the following five common law elements of fraud: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon

7

the representation; and (5) the creditor sustained a loss as a proximate result of the representation. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *In re Ritter*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009); *In re Negley,* 2008 WL 5158573 (Bankr. M.D. Pa. August 15, 2008). All five elements must be proven or the creditor's case will fail. In this case, Nace has offered evidence sufficient to carry his burden to prove that Debtor made certain false representations in the course of selling him an interest in Pillar, but he has failed to prove that Debtor knew that the representations were false when they were made. Having determined, as discussed below, that Nace failed to prove that Debtor knew that the representations about the Pillar investment were false when they were made, it is not necessary for me to determine that Debtor intended for Nace to act on the representation, that he justifiably relied on the representation, and that he was harmed as a consequence. However, as also discussed below, it is essentially undisputed that representations made to Nace about Pillar were false and that he was harmed as a consequence. Thus, the only elements that I do not reach are the issues of whether Debtor intended for Nace to act on the representations and whether Nace justifiably relied on them.

*1. Whether Debtor made a false representation*

The Amended Complaint asserts that Debtor made several false statements or omitted material information while marketing the Pillar investment to Nace.[6] Specifically, it accuses

---

[6]In addition to false representations through express statements by a debtor, silence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A). "A material fact is one touching upon the essence of the transaction." *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression." *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992).

Debtor of having represented: that Nace would get a fixed rate of return; that the note was "asset backed by real estate"; that Debtor was "familiar" with Pillar; and that Pillar was a "sound and appropriate investment" for Nace. The Amended Complaint also alleges that Debtor made misrepresentations to Nace by "provid[ing] certain literature concerning the investment which created the illusion that the investment was sound."[7] Except for the allegations regarding Debtor's "familiarity" with Pillar, Nace met his burden to prove these assertions.[8]

The record establishes that Debtor did represent to Nace that his investment in Pillar was similar to a certificate of deposit that would yield a 7% fixed return. As demonstrated by the evidence, not only did Nace fail to receive a fixed return on his investment, he lost most of the principal. Thus, Debtor's representation was false. Although Debtor denied having represented that the investment was sound, he promoted the investment as being related to Debtor's experience as a builder and secured by real estate. To the contrary, Pillar did not own the real estate represented as securing Debtor's interest and its investments were insufficient to guarantee a return of principal, let alone the promised earnings. Debtor argues that he was not responsible for the content of the documents he gave to Nace describing the investment – that he neither had a hand in drafting them, nor possessed knowledge that the content was false. Debtor cannot

---

[7] The Amended Complaint also alleges that Debtor failed to disclose that the securities purchased by Nace were not registered, and failed to disclose that he was an investment representative for Pillar until after Nace had invested $300,000 with Pillar. In my Opinion on Debtor's motion for summary judgment, I concluded that there was no merit to these allegations.

[8] Nace's use of the term "familiar" is very broad and ill-defined. In general terms, "familiarity" with an investment may mean that one is aware of the existence of a company, its products or services, and the general range of its trading price if its stock is publicly traded. The Court assumes that Nace, however, is implying that Debtor misrepresented that he had inside knowledge of the company, when, as is clear now, that he did not. I am unable to conclude on the evidence presented that Debtor misrepresented his knowledge about Pillar.

distance himself from the falsehoods in these documents so easily considering that he was holding himself out as a securities expert and was reaping a financial benefit from Nace's purchase of the Pillar securities. *See Luce v. First Equipment Leasing Corp. (In re Luce)*, 960 F.2d 1277 (5th Cir. 1992) (per curiam) (debtor may be liable for debt under §523(a)(2)(A) where debt was incurred by the deception of another and debtor benefitted financially); *In re Tsurkawa*, 258 B.R. 192 (B.A.P. 9th Cir. 2001) (wrongful conduct of third party may be imputed to debtor for purposes of nondischargeability).[9] Therefore, even if he is not responsible for the accuracy of the information in the documents, he is responsible for using false information, if he knew it was false, to induce Nace to make an investment.

*2. Whether Debtor knew that his representations were false when made*

Debtor denied that he knew that any of the information in the Pillar literature he gave to Nace was materially false. Debtor's testimony at trial suggests that he, like the investors he advised, was unaware that the Pillar investment was not "sound," that it would not produce a fixed rate of return on the investment, and that it was not "backed by real estate" owned by Pillar. As one who held himself out as an investment advisor, it is difficult to believe that Debtor was as guileless as he asserts. However, his ignorance of Pillar's true financial condition is supported by his testimony that he invested his own funds in Pillar as well as those of his mother. While Nace elicited testimony from Sindlinger regarding Debtor's involvement in the drafting of the Pillar literature that Nace received, he was unsuccessful in showing that Debtor contributed to the

---

[9] *See also In re Berman*, 248 B.R. 441 (Bankr. M.D. Fla. 2000) (debt arising from Ponzi scheme excepted from discharge under § 523(a)(2)(A) where scheme used false newspaper advertisements to market itself to investors; debtor was "operator" of the scheme, but court made no finding that he authored the advertisements).

10

substance of the documents. Further, when Debtor's mother had difficulty liquidating her investment, Debtor became suspicious of Pillar's viability and suggested to Nace that he should consider liquidating his holdings.

As the Factual Findings show, Pillar did not have an ownership interest in any of the real property listed on its "Portfolio" or its "Corporate Properties List." Debtor admits that at some point he became aware that one of the properties was Sindlinger's residence and not an investment property. But Nace failed to establish that Debtor obtained this knowledge while he was actively marketing the investment to Nace and not at some future date after the Certificate was issued. Accordingly, the record does not establish that Debtor knew when he gave the Portfolio and Corporate Properties List to Nace that any representations therein were false.

In sum, Nace failed to prove Debtor knew that Pillar's statements about the rate of return or the general safety of the investment were false. He also failed to prove Debtor's knowledge of the falsity of Pillar's statements regarding its real estate holdings at the time Debtor provided those statements to Nace. Lacking proof of Debtor's knowledge that his representations about Pillar were false, Nace's case under § 523(a)(2)(A) must fail.

  B.  *Nondischargeability under § 523(a)(19)*

Section 523(a)(19) provides that a discharge does not discharge an individual from any debt that:

(A) is for –

  (i) the violation of . . . any of the State securities laws . . . or
  (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from –

    (i) any judgment, order, consent order, or decree entered in any . . . State judicial or administrative proceeding;
    (ii) any settlement agreement entered into by the debtor; or
    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

  Separated into its component parts, § 523(a)(19) bars discharge of a debt if two conditions are met. First, the Court must determine that the debt was incurred for violation of securities laws or for fraud in connection with the purchase or sale of a security. Second, the Court must find that the debt arises from a judicial or administrative order or a settlement agreement resolving claims for the violation. Both conditions must be met. *Nusse v. Jafari (In re Jafari)*, 401 B.R. 494, 496 (Bankr. D. Colo. 2009); *see also In re Civiello*, 348 B.R. 459, 465-66 (Bankr. N.D. Ohio 2006) (debt must "arise[ ] from a violation of . . . securities law and . . . result[] from a . . . judgment order, consent order, or decree.").[10] Section 523(a)(19) must be read narrowly and applied only to debtors who have been found to have violated securities laws. *Sherman v. Securities Exchange Comm'n (Matter of Sherman)*, 658 F.3d 1009 (9th Cir. 2011) (citing *Kawaauhau v. Geiger*, 522 U.S. 57 (1998)). *But see Faught v. Matthews*, 423 B.R. 684 (D. Okla. 2010) (By its language, §523(a)(19) is not limited to debts for a debtor's direct violation of securities laws).

---

[10]Section 523(a)(19) was added to the Bankruptcy Code by § 803 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-24, §803(3), 116 Stat. 745 and amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Senate committee report for the 2002 Act states that this exception to discharge will "make judgments and settlements arising from state and federal securities law violations brought by state and federal regulators and private individuals non-dischargeable." S. Rep. 107-146 (2002) *quoted in Mollasgo v. Tills (In re Tills)*, 419 B.R. 444, 452 (Bankr. S.D. Cal. 2009).

In the matter before me, Nace asserts that the Cease and Desist Order issued by the Pennsylvania Securities Commission establishes that there was a violation of state securities law and that the Judgment Note is the consent order from which the debt arose. The difficulty with Nace's argument is that the Judgment Note does not state that the debt was "incurred for" violations of securities laws or for fraud in connection with the purchase or sale of the Pillar units. Rather, it simply says that "for value received" [Debtor and others] promise to pay to the order of [Nace] the sum of $276,753.13 . . . ." (Nace Ex. 9.) Thus, the language of the instrument does not recite that the debt was based on or resulted from a violation of state securities law. The Judgment Note simply commits the promisors to repay the debt owed by Pillar to Nace. If the Judgment Note had referred to the Cease and Desist Order, or if it had contained language in which Debtor admitted to having violated state or federal securities laws, then the necessary nexus between the violation and the debt would have been established. As the record exists, however, the two are not necessarily related.[11] Therefore, Nace has failed to carry the burden to prove that the Cease and Desist Order established a violation of securities laws by Debtor that culminated in the signing of the Judgment Note.

Although Nace failed to establish that the Cease and Desist Order issued by the Pennsylvania Securities Commission determined that Debtor violated state securities law,

---

[11]While both the judgment note and the Cease and Desist Order are dated April 20, 2010, the confluence of events on this date was purely coincidental. There was no testimony that the signing of the note was tied to proceedings occurring before the Pennsylvania Securities Commission around that time. Sindlinger testified that Nace's counsel mailed him the judgment note, that he hand carried it to Debtor for his signature, and that he then placed it in the mail back to counsel. Debtor confirmed this testimony. There was no testimony regarding participation by Debtor, Sindlinger, or Tavenner in any administrative proceeding of the Securities Commission.

§ 523(a)(19) also allows for a finding that a debt is excepted from discharge if the creditor proves before the bankruptcy court that his debt arose from a violation of state or federal securities law. Thus, in the instant case, if Nace had been able to prove that Debtor violated Pennsylvania securities law and that the Judgment Note arose from that violation, an exception to discharge under § 523(a)(19) would have been established. But while he established that Pillar securities were issued in violation of state law, Nace failed to assert a provision that Debtor is alleged to have violated. Moreover, even if Nace had established that Debtor engaged in activities in violation of state securities law, he also was required to establish a nexus between the violation and the Judgment Note. As stated above, the Judgment Note does nothing more than establish that Debtor and others agreed to assume personal liability for the repayment of Pillar's obligation to Nace.

### IV. Conclusion

The evidence adduced at trial fails to establish by a preponderance of the evidence that Nace's claim is based on a debt obtained by fraud under 11 U.S.C. § 523(a)(2)(A) or a debt resulting from a violation of state or federal securities laws under § 523(a)(19). Therefore, judgment will be granted in favor of Debtor and against Nace. An appropriate order will be entered.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: April 4, 2012

14

Case 1:10-ap-00337-MDF    Doc 54    Filed 04/04/12    Entered 04/04/12 14:13:21    Desc
Main Document    Page 14 of 14